JUDGE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KYLE ROBERT TORNOW,<br><br>Defendant. | NO. CR20-145JLR<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

I. **Introduction**

The defendant, Kyle Robert Tornow, by his attorney, Assistant Federal Public Defender Christopher Sanders, submits this memorandum in support of sentencing scheduled for July 27, 2021, at 10:15 a.m.

Mr. Tornow agrees with the United States Probation Office and requests a sentence of time served, with supervision to follow. He also agrees with the Government's expected recommendation that some amount of home confinement might be appropriate too. Mr. Tornow does not object to the idea of community service either, although any community service site must keep Mr. Torow's health in mind.

Mr. Tornow made a terrible decision and mistake when he threatened harm to the Portland Police Bureau. As counsel expects that he will personally share with the Court at his upcoming hearing, he is also saddened to realize that he diverted a

DEFENDANT'S SENTENCING
MEMORANDUM - 1
(*Kyle Robert Tornow;* CR20-145JLR)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

tremendous amount of attention and resources away from our law enforcement communities. Mr. Tornow also knows that this specific Court expends a significant amount of time and effort engaging in criminal justice reform oversight efforts. He understands that his conduct caused this Court to spend its time on sorting through his illegal conduct, instead of continuing its important work. That reality is not lost on Mr. Tornow either.

A broader context surrounds Mr. Tornow's lapse in judgment, and this filing outlines that context. Mr. Tornow's history and circumstances alone, however, do not fully excuse his decisions. Mr. Tornow simply hopes that this filing will assist the Court to find that a time served sentence, or a sentence that involves home confinement, is one that is just but not greater than necessary to comply with all of the purposes of sentencing.

## II.    The Sentencing Guidelines and the PSR

Mr. Tornow has no objections to the PSR or the United States Probation Office's calculation of the advisory Guidelines range.

## III.    About Mr. Tornow

Mr. Tornow's life appears average on its surface – he lives in an average middle-class home with his dad in West Seattle. Presentence Report ("PSR") at ¶ 34. Before his mother passed, she was a nurse and the pillar of their family, while his father worked a number of jobs to contribute. *Id*. Trouble brewed when Mr. Tornow's parents divorced at age thirteen. Mr. Tornow described this period as difficult for him. When his mother left for Florida, his father had to work four jobs to make ends meet. This left Mr. Tornow home alone. When he did see his father, they regularly fought and Mr. Tornow struggled in school.

DEFENDANT'S SENTENCING MEMORANDUM    - 2
(*Kyle Robert Tornow;* CR20-145JLR)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

To turn things around, Mr. Tornow moved to Florida to be with his mother. PSR at ¶ 36. This allowed Mr. Tornow to reset his relationship with his father, and Mr. Tornow returned to Washington just one year later. *Id*.

Mr. Tornow's life continued uneventfully through his teens and twenties until a series of events again derailed it. The first of those events was his mother's death in 2016. His mother's death turned Mr. Tornow's world upside down. While Mr. Tornow's relationship with his father is sometimes difficult, Mr. Tornow's mother was always a pillar of support for Mr. Tornow. Her departure crushed him.

Mr. Tornow's heart failed not soon thereafter. One day in 2017, Mr. Tornow began to notice that he was often out-of-breath. He sought medical attention and went into cardiac arrest while in the emergency room. Although the medical staff resuscitated him, as it turned out, Mr. Tornow needed a new heart.

As Mr. Tornow awaited a new heart he had a left ventricular assist device ("LVAD") inserted. This battery-powered device is a mechanical pump used for end-stage heart failure.[1] The device helped his heart function in the meantime. Mr. Tornow describes the experience as one that required him to ensure that his LVAD device remained fully charged or plugged in, in a robotic-like existence. After six months with the LVAD, a heart became available and he underwent a heart transplant surgery that again would bring him to the brink of death. This is because Mr. Tornow's surgeons nicked his lungs during the surgery. The medical staff placed him into a medically induced coma for five days and he remained in the hospital for about a month afterwards. PSR at ¶ 39. Mr. Tornow says that he is not upset with the medical staff;

---

[1] https://stanfordhealthcare.org/medical-treatments/l/lvad.html

DEFENDANT'S SENTENCING
MEMORANDUM  - 3
(*Kyle Robert Tornow*; CR20-145JLR)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

instead, he has a great amount of reverence for them because they saved his life twice by this point.

Mr. Tornow's recovery period from that point on has not been easy either. He will never again function at full capacity or be able to do things that other people can do. For example, Mr. Tornow remains on disability and know if he will ever work again, due to the realities of his health conditions and the fact that he is an immunosuppressed person. Meanwhile, Mr. Tornow's once-vibrant social life now faced new realities beset with doctor's visits and concerns about cleanliness. He also faces the prospect that his body will reject his new heart. This means that he requires life-long specialty care at a heart transplant center. *See* Exhibit 1 (Dr. Wood Letter). He takes a long list of medications and undergoes regular blood and heart monitoring at the University of Washington. Even prior to the COVID-19 pandemic, his medical team directed Mr. Tornow to take a number of precautions to protect his heart, health and life. *Id*. These included wearing masks in public, avoiding large crowds, and avoiding certain activities like gardening because of the germs that could exist in those settings. *Id*. The pandemic only compounded his doctors' concerns about the vulnerable nature of Mr. Tornow's health.

While Mr. Tornow is fortunate to be alive, especially at a time when many other people are not as fortunate, what is also true is that the 2020 COVID-19 pandemic only compounded Mr. Tornow's troubles. This is because Mr. Tornow is an immunosuppressed person who is at risk of serious illness or death should he contract COVID-19.[2] To take as many preventative measures as he could, Mr. Tornow tried his

---

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

DEFENDANT'S SENTENCING
MEMORANDUM    - 4
(*Kyle Robert Tornow;* CR20-145JLR)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1. best to strictly quarantine for the bulk of the pandemic. He and his father made efforts
2. to stay away from each other within the confines of their own home. They developed
3. separate times where they could each use the kitchen so that they would never be in the
4. same room at the same time, in close proximity with each other. They only talked to
5. each other through the walls or from a distance, but not face-to-face. Meanwhile, Mr.
6. Tornow's social life continued its decline. His father eventually left for a teaching job
7. in South Dakota and that left Mr. Tornow with little to no social contact with anyone at
8. all, other than what contact he had through internet-enabled devices. These challenges
9. also complicated Mr. Tornow's fight to maintain his mental health and troubles with
10. impulsivity, depression, and a history of panic disorder. *See* Exhibit (Dr. Koenen
11. Evaluation.)

best to strictly quarantine for the bulk of the pandemic. He and his father made efforts to stay away from each other within the confines of their own home. They developed separate times where they could each use the kitchen so that they would never be in the same room at the same time, in close proximity with each other. They only talked to each other through the walls or from a distance, but not face-to-face. Meanwhile, Mr. Tornow's social life continued its decline. His father eventually left for a teaching job in South Dakota and that left Mr. Tornow with little to no social contact with anyone at all, other than what contact he had through internet-enabled devices. These challenges also complicated Mr. Tornow's fight to maintain his mental health and troubles with impulsivity, depression, and a history of panic disorder. *See* Exhibit (Dr. Koenen Evaluation.)

### IV. Mr. Tornow's Conduct

On July 24, 2020, against the backdrop of Mr. Tornow's health conditions and his pandemic-induced isolation, and in the midst of a nation-wide discussion on criminal justice reform, Mr. Tornow made a devastatingly terrible, irrational, and impulsive decision. He threatened harm to the Portland Police Bureau building.

Like many people, Mr. Tornow became concerned about the various subjects that spurred the 2020 summer protests. In particular, he was upset about one news story where some alleged that the police used force on a medical tent that some protestors set up for people who need medical care. Medical professionals saved Mr. Tornow's life on more than one occasion and he felt unusually protective over the medical profession in general.

Unlike most people, however, Mr. Tornow made a devastatingly terrible, irrational and unlawful decision to threaten harm to the Portland Police Bureau

DEFENDANT'S SENTENCING MEMORANDUM - 5
(*Kyle Robert Tornow*; CR20-145JLR)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

building. Although his threat was unsophisticated in its nature, and he took no measures to protect his identity or steps to carry out the threat, those facts do not matter in Mr. Tornow's eyes. He knows that he will regret that day for the rest of his life, long after the completion of this case. Mr. Tornow also knows that he distracted attention away from the earnest efforts that many groups make towards criminal justice reform. He also knows that his decision undoubtedly caused law enforcement to expend an unnecessary amount of resources to resolve his threat. Although Mr. Tornow did not have the means or intent to carry through with his threat, the recipients did not know that. For these reasons, and many others, Mr. Tornow does appreciate the serious and long-lasting nature of his conduct and has already made efforts to make sure that it never happens again.

## V.     Argument

Despite the serious nature of Mr. Tornow's conduct, Mr. Tornow agrees with the United States Probation Office and with the Government's expected recommendations. He asks the Court to consider a time served sentence or a sentence of some amount of home confinement. Either one of these sentences would be sentences sufficient but not greater than necessary to comply with the purposes set forth in the federal sentencing statute. *See* 18 U.S.C. § 3553.

One of the purposes set forth in the sentencing statute are the history and circumstances of the defendant. 18 U.S.C. § 3553(a)(1). Mr. Tornow's unusually difficult challenges prior to this offense do merit some consideration. His mother's death, followed by a years-long fight for his own life, subsequently compounded with the isolation of a pandemic do not excuse his conduct. These are simply considerations that provide a context for Mr. Tornow's conduct and understanding his frame of mind

DEFENDANT'S SENTENCING MEMORANDUM    - 6
(*Kyle Robert Tornow;* CR20-145JLR)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

at that time. Mr. Tornow might not have been brought to the point where he made such an irrational decision, but for the compounding and unfolding nature of the other challenges in his life. In that vein, this case is much different from those where defendants make similar situations without any kind of extenuating circumstances.

Another purpose of the federal sentencing statute is the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide a just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). In this case, although this offense is punishable by no more than five years in prison, and although Mr. Tornow's advisory guidelines range is less time than that, a sentence of incarceration could be fatal to Mr. Tornow. This is because he will not have ready access to his cardiology team or to the regularly scheduled appointments that he attends in order to ensure that he does not again fall into heart failure. It is also not clear that he would have access to all of his medications or to the cleanliness standards that his medical conditions require. This means that a sentence that could result in Mr. Tornow's death would not reflect the seriousness of the offense. A sentence that could result in his death would exceed the maximum possible punishment under the interstate communications statute. A sentence that involves actual incarceration would not provide a just punishment for the offense either for that same reason. Instead, Mr. Tornow asks the Court to consider a sentence of time served or a sentence that includes some amount of home confinement.

Finally, there also exists a need to protect the public. A sentence of time served or of home confinement would protect the public in that Mr. Tornow would be under a strict set of supervised release conditions that would protect the public. Mr. Tornow has shown through his yearlong pretrial supervision that supervision works for him. He has not had any difficulties complying with supervision. He has also already completed an

DEFENDANT'S SENTENCING MEMORANDUM   - 7
(*Kyle Robert Tornow*; CR20-145JLR)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

initial treatment process that has given him an important and healthy tool, the Satori West Method, which helps him with anxiety issues and to avoid the impulsive decision making process that got him here. *See* Exhibit 3 (Morisette Support Letter). *See also* Exhibit 4 (Defendant AOR Letter). This Court should consider keeping those conditions in place.

### VI. Conclusion

For these reasons, Mr. Tornow asks the Court to consider a sentence of time served, with supervision to follow. In the alternative, Mr. Tornow asks the Court to consider home confinement. These are just sentences that are sufficient, but not greater than necessary to meet the goals of the sentencing statute.

DATED this 20th day of July, 2021.

Respectfully submitted,

s/ *Christopher M. Sanders*
Attorney for Kyle Robert Tornow
Office of the Federal Public Defender

DEFENDANT'S SENTENCING MEMORANDUM - 8
(*Kyle Robert Tornow;* CR20-145JLR)

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100